In re DENTON COUNTY ELECTRIC COOPERATIVE, INC. d/b/a CoServ Electric, et al., Debtors.

Denton County Electric Cooperative, Inc. d/b/a CoServ Electric, Plaintiff,

v.

Eldorado Ranch, Ltd., Defendant.

Bankruptcy No. 02–40665–DML–11.
Adversary No. 2–4135.

United States Bankruptcy Court, N.D. Texas, Fort Worth District.

Aug. 1, 2002.

Holland Neff O'Neil, Richard M. Roberson, Merrill L. Kaliser, Gardere Wynne Sewell, LLP, Dallas, TX, for plaintiff.

J. Maxwell Tucker, Arthur J. Anderson, Winstead Sechrest & Minick, P.C., Dallas, TX, for defendant.

## MEMORANDUM OPINION

DENNIS MICHAEL LYNN,
Bankruptcy Judge.

Before this Court is Defendant's Motion to Abstain and Dismiss Debtor's Complaint for Declaratory Judgment (the "Motion to Abstain"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(3), 1334(c) and 2201(a).

### I. Background

This adversary proceeding by Denton County Electric Cooperative, Inc. d/b/a CoServ Electric ("CoServ" or the "Debtor") against Eldorado Ranch, Ltd. ("Eldorado" or the "Movant") seeks declaratory relief relating to charges Debtor expects to recover from Movant in the future for part of the cost of an electrical infrastructure. In its complaint, Debtor seeks resolution of issues raised by Movant regarding the propriety of the charges.

### A. Factual Context

Eldorado is a limited partnership organized in the State of Texas. Its principal business is real estate development, including in the City of Frisco, Texas ("Frisco").

Debtor is an electric cooperative incorporated in the State of Texas. It provides electric service to six counties in northern Texas, including in Frisco. It contracts with real estate developers for the installation of electric infrastructure and the distribution of electric power.

On or about December 20, 1977, Frisco approved a franchise agreement with CoServ[1] (the "Franchise Agreement") for a period ending December 31, 2028. Based on the Franchise Agreement, CoServ received a Certificate of Convenience and Necessity (the "Certificate") from the Texas Public Utilities Commission.[2] The Certificate and Franchise Agreement permit CoServ to install, operate and extend electrical service in Frisco, which lies within CoServ's single certificated area. Because Frisco is within its single certificated area, CoServ is the only utility company certificated in Frisco.

A tariff defines the relationship between CoServ and its customers, including with regard to rates and services. CoServ provides services in Frisco pursuant to such a tariff (the "Tariff"). In February 2001, CoServ revised the Tariff to reflect changes in rates, line extension policies and other fees. Pursuant to section 41.061 of the Texas Utilities Code, CoServ provided notice to its customers of the revision and held a public meeting. CoServ also notified Frisco and Eldorado of the revisions to the Tariff.

On or about July 1, 2001, Frisco amended its Subdivision Regulation Ordinance.[3] The new ordinance requires, inter alia, that certain electrical and communication utility lines be placed underground.

On or about August 6, 2001, CoServ and Eldorado entered into a service agreement whereby CoServ would provide electric infrastructure and power to Eldorado's Grayhawk development (the "Develop-

---

1. Frisco Ord. # 482, see Debtor's Complaint for Declaratory Judgment, Exh. "A".

2. See TEX. UTIL.CODE ANN. § 37.051 (LexisNexis, LEXIS through 2001 Sess.).

3. Frisco Ord. No. 94–08–19 (1994), amended by Ord. No. 01–07–51 (2001) available at http://www.ci.frisco.tx.us/secretary/legal—publications.htm (last visited July 12, 2002).

ment"), which is located in Frisco. The agreement covered Phases I, II and III of the Development. In accordance with the Tariff, the agreement provided that Eldorado be charged the cost of the infrastructure necessary for CoServ to provide service to Eldorado's buyers, less an $1,800.00 per lot allowance absorbed by CoServ. Eldorado paid CoServ $226,031.26 for the infrastructure work on the initial three phases.[4]

Eldorado sold Phases IV and V to another developer and began preparation of phases VI through VIII of the Development. Although CoServ and Eldorado had not yet formally contracted for provision of utility services to phases VI through VIII, CoServ commenced work on the infrastructure to support them. This included the construction of an underground duct bank.[5] The cost of the underground duct bank, apparently excluding other infrastructure and the $1,800.00 per lot allocation, was $494,385.68. Although Eldorado has been billed, it has not made payment for any work done by CoServ in connection with phases VI through VIII.

## B. *Procedural Context*

Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, on February 2, 2002. On March 21, 2002, Eldorado filed a Motion to Terminate the Automatic Stay (the "Motion to Terminate"). By the Motion to Terminate, Eldorado sought to pursue claims against Debtor through the state court system. In response, Debtor filed a Complaint for Declaratory Judgment (the "Complaint") on May 6, 2002.

As a result of the filing of the Complaint, the Court denied the Motion to Terminate. Eldorado then filed the Motion to Abstain on May 16, 2002.

## C. *The Parties' Positions*

In the Motion to Abstain, Movant requests that this Court abstain from hearing Debtor's declaratory judgment suit. In its suit, Debtor asks the Court to declare the claims Eldorado sought to bring by the Motion to Terminate to be without merit.

Eldorado's primary claim is that the excessive amount Debtor proposes to charge for the infrastructure amounts to a "taking" under the Texas and United States Constitutions. Further, it argues that Debtor has unlawfully used its monopolistic position and has violated the Tariff, Franchise Agreement and several of Frisco's ordinances. Because Texas law is central to these potential suits, Eldorado argues that this Court should abstain in deference to Texas' state court system.

Debtor denies that imposition on Movant of charges pursuant to the Tariff violates federal, state and local laws or the Texas or United States Constitution. Debtor argues that the Complaint is a "core" matter, and that this Court should, therefore, hear it. Debtor further argues that Movant's claims are frivolous and that, in any case, because the issues involve "novel" state law, the bankruptcy court is as well qualified as a state court to decide them.

4. Movant has not filed a timely proof of claim on Phases I, II and III in Debtor's bankruptcy case. The bar date for filing proofs of claim has passed and Movant may not seek any relief from Debtor involving Phases I, II and III absent leave of the court.

5. "The Duct Bank is for a feeder line. A feeder line is a large capacity electric line ... required to deliver bulk power to load centers within a geographic area." Debtor's Complaint for Declaratory Judgment, FN 2.

## II. *Discussion*

Movant asserts that under 28 U.S.C. § 1334(c)(2) mandatory abstention applies to the Complaint. It argues, alternatively, that this Court should permissively abstain under 28 U.S.C. § 1334(c)(1).

### A. *Mandatory Abstention:*

■ Section 1334(c)(2), which governs whether mandatory abstention applies, states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In the first instance, whether the Complaint fits within section 1334(c)(2) depends on whether a like case must be pending in state court. This, in turn, must be determined from the meaning of the words, "an action is commenced."

Movant's argument that these words do not require pendency of an action in state court and, therefore, mandatory abstention should occur in this case, relies on *In re World Solar*, 81 B.R. 603, 612 (Bankr. S.D.Cal.1988). The court held there that a pending state court action is not a prerequisite for mandatory abstention if one can be filed on a timely basis.[6] *World Solar*, however, has not been followed. Indeed, nearly ten years after the *World Solar* opinion, the Ninth Circuit Court of Appeals, in *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1009 (9th Cir.1997),[7] reached a contrary conclusion without even citing *World Solar*.

Most other courts considering mandatory abstention have ignored or rejected the *World Solar* court's interpretation as well,[8] including several courts from within the

---

6. *World Solar*, 81 B.R. at 612 ("This court therefore concludes that a pending state court action is not a prerequisite for mandatory abstention. Rather, the court must decide whether such an action can be filed on a timely basis in a state court of appropriate jurisdiction.").

7. *Security Farms*, 124 F.3d at 1009 ("Abstention can exist only where there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain."), *citing In re S.G. Phillips Constrs., Inc.*, 45 F.3d 702, 708 (2nd Cir.1995) (including as a requirement for mandatory abstention the presence of a previously commenced state action) *and In re Tucson Estates*, 912 F.2d 1162, 1167 (9th Cir.1990) (recognizing as a factor for permissive abstention the presence of a related proceeding commenced in state court or other nonbankruptcy court).

8. *See, e.g., Juan Flores Rivera v. Telemundo Group*, 133 B.R. 674, 676 (D.P.R.1991) ("In *In re World Solar Corp.*, the bankruptcy court concluded that 'a pending state court action is not a prerequisite for mandatory abstention.' We disagree. The language of Section 1334(c)(2) is clear; in order for the statutorily mandated abstention to apply to this proceeding, an action in the Commonwealth courts must be pending."); *Ram Constr. Co. v. Port Auth. of Allegheny County*, 49 B.R. 363, 367 (W.D.Pa.1985) ("We do not believe that § 1334(c)(2) applies since PAT does not allege that an action has been commenced in state court ..."); *In re Altchek*, 119 B.R. 31, 34 (Bankr.S.D.N.Y.1990) ("Because no state court action is pending with respect to the debtor's claims, it follows that mandatory abstention is unavailable to the defendants."); *Taxel v. Commercebank (In re World Fin. Servs. Center, Inc.)*, 64 B.R. 980, 989 (Bankr. S.D.Cal.1986) ("Mandatory abstention does not apply to the instant case in that there is no pending state court action.").

Fifth Circuit. *See Broyles v. U.S. Gypsum,* 266 B.R. 778, 783 (E.D.Tex.2001); *Thomas v. R.J. Reynolds,* 259 B.R. 571, 576 (S.D.Miss.2001).[9] Given the applicability of the plain meaning rule to statutes governing bankruptcy law and procedure, *World Solar* appears incorrect. The words "an action is commenced" cannot easily be interpreted to include an action to be commenced in the future. This Court therefore concludes that mandatory abstention under 28 U.S.C. § 1334(c)(2) requires a state court action to be pending.

Because there is currently no pending state court action, it is clear that mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to Debtor's declaratory judgment suit. Abstention thus may only occur under 28 U.S.C. § 1334(c)(1).

## B. *Permissive Abstention*

Section 1334(c)(1) allows the Court to abstain on a permissive basis. It states, "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

■ In determining whether to abstain under section 1334(c)(1), most courts have applied a nonexclusive list of twelve factors.[10] These factors have recently been adopted in the District Court for the Northern District of Texas by the Honorable Jorge Solis.[11] The factors are:

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) The extent to which state law issues predominate over bankruptcy issues;

(3) The difficulty or unsettled nature of the applicable state law;

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) The substance rather than form of an asserted "core" proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden on the bankruptcy courts docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to a jury trial; and

(12) The presence in the proceeding of nondebtor parties.

■ Were this Court to apply exclusively these twelve factors, abstention would, on balance, be appropriate. However,

**9.** *Thomas,* 259 B.R. at 576 ("The proceeding has already been commenced and can be timely adjudicated in a state court forum."), citing *In re McCray,* 209 B.R. 410, 414 (Bankr.N.D.Miss.1997).

**10.** *See, e.g., In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184, 1189 (7th Cir. 1993); *In re Tucson Estates,* 912 F.2d 1162, 1166–67 (9th Cir.1990); *In re Republic Read-*

*er's Service, Inc.,* 81 B.R. 422, 429 (Bankr. S.D.Tex.1987).

**11.** *Flores v. Baldwin,* 2002 WL 1118504, at *8, 2002 U.S. Dist. Lexis 9539, at *19–20 (N.D.Tex. May 28, 2002); *Hester v. Coho Energy, Inc. (In re Coho Energy, Inc.),* 2002 WL 523948, at *5, 2002 U.S. Dist. LEXIS 5862, at *19–20 (N.D.Tex. Apr. 5, 2002).

Debtor has asserted that Eldorado's claims are unfounded to the point of being borderline frivolous. While Eldorado frames the issues as arising under the United States and Texas Constitutions, and Texas antitrust and regulatory laws, Debtor takes the position that what Eldorado is really concerned with is Debtor's ordinary and normal way of doing business with its developer clients. In other words, Movant is unhappy with the way Debtor enters into contracts in the ordinary course of business.

If Debtor is correct, then the issues presented here are core. They would involve determinations respecting Debtor's ordinary and normal course of business, since the dispute would focus on both the ordinary and normal course of business within the industry and expectations regarding the conduct of Debtor's business, the two tests ordinarily applied to determine the ordinary course of business.[12]

■ Several of the twelve factors regularly cited inherently require that the Court look into the merits of the case.[13] In addition to the 12 standard factors, it is reasonable for a court to consider whether the claims asserted are sufficiently meritorious to require more than summary consideration. In doing this, a court must assess the strengths or weaknesses of the parties' arguments. At this point, though a cursory review of the law suggests Debtor is following longstanding practices which comply with applicable law, the Court does not know enough to make a determination of the merits of Movant's claims. But, if Debtor is right, the adversary proceeding should be susceptible to disposition, at least in large part, by a motion for failure to state a claim, judgment on the pleadings or summary judgment.[14]

■ If Debtor is correct, the fact that Texas law is at issue is collateral to the ordinary conduct of Debtor's business. While determinations as to what is property of the estate are typically determined by state law, this does not mean a bankruptcy court should defer to a state forum in deciding whether an interest in property is within the scope of 11 U.S.C. § 541(a). Likewise, assessing a debtor's ordinary course of business and whether it conforms with applicable law is a matter properly left to the bankruptcy court (at least until it is clear that Debtor's practices may amount to actionable conduct under state law). Mere conclusory allegations that a debtor, acting in a fashion consistent with

---

12. The "horizontal test" and the "vertical test" are the tests courts generally use in determining what is the ordinary and normal course of business. The "horizontal test" focuses on the way businesses operate within a given industry. The "vertical test" focuses on the expectations of creditors. *See In re Roth American, Inc.*, 975 F.2d 949, 954 (3rd Cir. 1992); *Burlington N. Ry. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 705 (9th Cir.1988); *Committee of Asbestos–Related Litigants and/or Creditors v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 60 B.R. 612, 616 (Bankr.S.D.N.Y. 1986); *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y.1983).

13. Factors that require looking into the merits of the case include: the extent to which state law issues predominate over bankruptcy issues; the difficulty or unsettled nature of the applicable state law; the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; the substance rather than form of an asserted "core" proceeding; and, the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.

14. Any such motions should be filed under FED.R.CIV.P. 12(b)(6), 12(c) & 56, which are incorporated into the Federal Rules of Bankruptcy procedure by FED. R. BANKR.P. 7012 & 7056.

 

past conduct and industry norms, has transgressed the law are not sufficient to deprive the Court of the competence or jurisdiction to hear an adversary proceeding that turns on this question. To hold otherwise would risk abdication of the Court's oversight of administration of chapter 11 cases.

Moreover, Debtor argues that the state law issues raised by Eldorado have not been the subject of varying opinion in state forums but rather are largely instances of first impression. Resolution by a state court, therefore, is not as important as it would be if this were an area of law where there were contradictory holdings.[15]

### III. Conclusion

In conclusion, mandatory abstention is not appropriate because there is no pending state court action. The decision to abstain, therefore, is discretionary. Discretionary abstention is based on various factors, which run to the nature of the action, its impact on administration, the expertise of the forum and efficient and prompt disposition of the matter. Although the majority of historically articulated factors weighs in favor of abstention, the list is not exclusive. If Debtor is correct, the state law issues are collateral to Debtor's ordinary course of business. Maintenance of Debtor's business and the manner in which it is conducted are central to this case and properly the concern of the Court.

It is therefore ORDERED that the Motion to Abstain and Dismiss is DENIED subject to reconsideration and without prejudice.

Counsel for Movant is directed to prepare and submit to the Court an order consistent with this memorandum. Such order shall be served on counsel for Debtor upon submission to the Court.

The Court further directs that if either party wishes to file a motion for summary disposition of this matter it may file it at any time after Movant has answered. To the extent that any FED.R.CIV.P. 12(b)(6), 12(c) or 56 motions Movant might wish to file could not be filed after an answer, it may file them with the answer.

---

**15.** *Hester v. Coho Energy, Inc. (In re Coho Energy, Inc.)*, 2002 WL 523948, at *5, 2002 U.S. Dist. LEXIS 5862, at *21–22 (N.D.Tex. Apr. 5, 2002) ("[I]f a state law issue is not unsettled, or if there is no state authority directly on point, then the bankruptcy court is equally qualified to resolve the issue.") *citing* *In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993) ("If a state law issue is not unsettled, or if there is no state authority directly on point, then the bankruptcy court is qualified to resolve the issue, and there is no need to refer it to a state court.")